IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDDIE GUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:16cv548-WKW-WC |
| | ) | |
| ELMORE COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

On July 6, 2016, Freddie Gunn ("Plaintiff") filed a complaint (Doc. 1) alleging that

the Elmore County Board of Education ("Defendant") discriminated against him because

of his race when he was overlooked for the position of Shop Foreman.  Pending before the

court is Defendant's Motion for Summary Judgment (Doc. 29) and its Brief in Support

(Doc. 30) thereof; Plaintiff's Response in Opposition to Defendant's Motion for Summary

Judgment (Doc. 32) and his Brief in Support (Doc. 33) thereof; and Defendant's Reply

(Doc. 35). Defendant's motion is ripe for recommendation to the United States District

Judge.[1] For the reasons that follow, the undersigned finds that Defendant's motion for

summary judgment is due to be GRANTED.

---

[1] On August 17, 2016, the District Judge entered an order (Doc. 11) referring the above-styled case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[2] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the non-moving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—

3

including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial.  *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 54 (11th Cir. 2012) (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment

if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

## III.   STATEMENT OF FACTS

In 1999, Plaintiff, a black male, started working for Defendant in the transportation department with six other mechanics, four of whom were white and two of whom were black. Doc. 31-1 at 19:11-12; 20:13-20; 132:6-9. Specifically, Plaintiff worked as a bus mechanic and as a bus driver. *Id*. at 19:18-20. During his employment with Defendant, Plaintiff applied for the position of bus Shop Foreman on three occasions, and applied for the last time in May 2014.[3] *Id*. at 124:18-125:22; Doc. 31-3 at 32:17-23. Plaintiff and Frank Hysmith, a white male, were the only candidates who interviewed for the job. Doc. 31-4 at 6:10-21; Doc. 31-2 at 35:2-3:36:8-10.

The 2014 interviews were conducted by a panel of four interviewers: (1) Ray Mullino (white male), who currently serves as the Transportation Coordinator for Defendant; (2) Gary Gregory (white male) who was the maintenance department supervisor; (3) Nick Townsend (black male) who was an assistant principal; and (4) Gina Sanders (black female) who was an elementary school principal. *Id*. Doc. 31-2 at 7:4-14; 36:11-17; 46:17-47:16; Mullino Aff. (Doc. 31-3) at ¶ 1, 6. All interviewers scored Hysmith higher than Plaintiff. Doc. 31-12. Hysmith was subsequently selected as the candidate to be recommended for hire. Doc. 31-2 at 39:15-20.

---

[3] The May 2014 application forms the basis of Plaintiff's claims in this case.

After Hysmith was promoted to bus Shop Foreman, Plaintiff filed an EEOC charge alleging racial discrimination on October 14, 2014. Doc. 13. In his EEOC charge, Plaintiff states that he was overlooked for the Shop Foreman position twice, and the position was filled by white males who either did not possess the required certifications or had violations within their personnel file. Doc. 31-13.

Plaintiff resigned from his job with Defendant in April 2015 and started working at Montgomery Public Schools. Doc. 31-1 at 37:21-38:1; 6:6-7; 7:11-12; *see also* Gunn Resignation Letter (Doc. 31-5). Plaintiff testified that it is possible that he told other people he was leaving his job with Defendant because he could make more money in Montgomery. Doc. 31-1 at 85:23-86:3. In his resignation letter he stated: "While I have enjoyed working with the Transportation Department, I feel like I must move into a new phase in my life. I wish you and the Elmore County Board of Education continued success." Doc. 31-5.

## IV.   DISCUSSION

Plaintiff's amended complaint sets forth a claim of race-based discrimination in violation of Section 703(a) of Title VII. *See* Doc. 12 at 4. Plaintiff states that Defendant discriminated against him on the basis of his race when they did not promote him to Shop Foreman, even though he was qualified for the position, and instead promoted a white male, Hysmith, who was not qualified for the position. *Id*. Plaintiff also alleges that the claim of discrimination is based upon Defendant's decision to promote a white male that was racially biased to supervise black employees, and for retaliating against Plaintiff after he complained of the discrimination. *Id*. at 4-5.

Although it is not exactly clear to the undersigned, the amended complaint may also be attempting to set forth a claim for retaliation. Plaintiff's complaint states that Defendant retaliated against him by accusing him of wrongdoing and placing negative statements in his personnel file for doing the same actions that white employees were allowed to do. *Id*. at 4. Plaintiff alleges that these actions occurred after he complained of discrimination and different treatment of black employees to his supervisor. *Id*.

The undersigned turns to address both claims against Defendant's motion for summary judgment.

## A.   Plaintiff's race-based discrimination claim.

Title VII of the Civil Rights Act of 1964, in relevant part, forbids covered employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Evidence of discrimination may be shown through direct evidence or circumstantial evidence. *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). When Title VII plaintiffs, like Plaintiff here, rely upon circumstantial evidence,[4]

---

[4] Direct evidence of discrimination is "evidence which, if believed, would prove the existences of a fact [in issue] without inference or presumption." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990) (citation and emphasis omitted). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race] . . . constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (citations omitted). "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Bd. of Trustees,* 91 F.3d 1449, 1453–54 (11th Cir. 1996). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998). Plaintiff has not presented evidence of this kind; thus, the undersigned will evaluate Plaintiff's circumstantial evidence of discrimination under the standard set forth above in the text of this recommendation.

the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981), is applied.

Under the *McDonnell Douglas* framework, a plaintiff first must make out a *prima facie* case of discrimination.  To establish a *prima facie* case of race-based discrimination for failure to promote, a plaintiff generally must show that: (1) he is a member of a protected class, (2) he applied for a position that he was qualified for, (3) he was rejected for the position, and (4) someone outside his protected class was hired.  *See Flowers v. Troup Cty., Ga., Sch. Dist.,* 803 F.3d 1327, 1333 (11th Cir. 2015). The Eleventh Circuit has repeatedly stated that the formulation of a *prima facie* case is not onerous. *See, e.g., Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).

If a plaintiff presents a *prima facie* case of discrimination, that "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254. At the time this presumption of discrimination arises, the burden then shifts to the employer to produce "a legitimate, nondiscriminatory reason" for the action taken against the plaintiff. *Id*. This burden is merely an evidentiary one that "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993). "Once the employer advances its legitimate, nondiscriminatory reason [for its employment decision], the plaintiff's *prima facie* case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Burdine,* 450 U.S. at 255). The parties then "have a full and fair opportunity" to litigate whether the employer's proffered reason for its action is pretext. *Burdine* at 255-56. In order to survive summary judgment, the plaintiff must meet the employer's proffered reason head on and rebut it with evidence showing that the

8

real reason for the employer's decision is racial discrimination. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1088 (11th Cir. 2004). The plaintiff may do so by either directly "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256 (citing *McDonnell Douglas,* 411 U.S. at 804-05).

Here, Defendant concedes, for the purposes of summary judgment only, that Plaintiff has presented a *prima facie* case of discrimination. Doc. 30 at 19. Thus, the burden shifts to Defendant to offer a legitimate, nondiscriminatory reason for why Plaintiff was not promoted to the Shop Foreman position. Defendant offers that it has "made clear that it based its hiring decision on the most qualified person for the job, [who was] the candidate receiving the highest scores from the interview process." *Id.* at 20.

The Eleventh Circuit has held that a subjective reason, including interview performance, qualifies as a "legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion." *Chapman v. AI Transp.,* 229 F.3d 1012, 1034 (11th Cir. 2000). Thus, Defendant's proffered reason for choosing Hysmith over Plaintiff is considered sufficient to rebut Plaintiff's *prima facie* case of discrimination so long as this reason articulates a clear and specific factual basis upon which it was based.

The interview process in this case consisted of six questions, the answers to which interviewers scored the candidates based on a scale from 1 to 13. Doc. 31-2 at 41:3-43:13. The same six interview questions were asked of both Plaintiff and Hysmith. *See* Doc. 31-15; Doc. 31-3 at ¶¶ 7-10. The questions included the following:

1. Please tell us about your experiences with heavy duty diesel equipment and school buses.
2. As the Shop Foreman you will have to create memos, and spreadsheets, what experiences do you have with Microsoft Word, Excel, and PowerPoint?
3. We now have a process for the drivers to communicate problems to the mechanics, as Shop Foreman how would you improve this process to ensure buses are repaired in a timely manner?
4. Please tell us your response to the following scenario, after leaving the school a bus driver pulls into a neighborhood to make his/her first stop when he/she noticed the eight way lights are not working properly. What would you tell the driver and what actions would you take to make sure the children are dropped off safely for the remainder of the route?
5. As Shop Foreman, you will have to make split-second decisions that could save or cost the County money. What experiences do you have to ensure us you are able to make those decisions?
6. Why are you the best person for this job and why do you want this job?

Doc. 31-15 at 2. In addition to the questions listed above, the interviewers were also asked to evaluate the candidates in the following four categories based upon their interview skills and presentation:

1. Organization of answer into a meaningful and concise narrative
2. Poise and confidence demonstrated in answering
3. Demonstration of warmth, people skills, ability of getting along with peers, etc.
4. Appropriate neatness, posture, and other non-verbal communication

Doc. 31-15 at 3-4. Those categories of evaluation were worth five points each. *Id.* The candidate receiving the highest scores for the Shop Foreman position was Hysmith, not Plaintiff. Doc. 31-12 (noting that Plaintiff received a total score of 319 from all interviewers, while Hysmith received a score of 356).

The undersigned concludes that Defendant's proffered reason for its employment action meets Defendant's burden to produce a legitimate, nondiscriminatory reason for promoting Hysmith instead of Plaintiff. Importantly, the interview score sheet used in the

10

evaluation process provided specific categories in which each interviewer scored the candidate based upon the candidate's answer to a particular question, and the general interview skills they exhibited throughout the process. The same questions were asked of both candidates; thus, the candidates were judged against each other based upon the answers they provided, and their ability to perform in the interview. While the interview process is undoubtedly subjective in nature, the undersigned finds that the difference in the scores, which was based upon a clear and reasonably specific factual basis from each interviewer, provides a legitimate, nondiscriminatory reason for Defendant to promote Hysmith instead of Plaintiff.

As Defendant has produced a legitimate, nondiscriminatory reason for its employment action, the presumptions drop from the case, and Plaintiff must now demonstrate that Defendant's proffered reason for not promoting him as Shop Foreman is not the true reason for Defendant's decision, but is merely pretext for discrimination based on race. *See Davis v. NPC Pizza Hut*, 226 F. App'x 890, 891 (11th Cir. 2007). Defendant contends that Plaintiff cannot meet this burden. Doc. 30 at 19-28.

Although not particularly clear from Plaintiff's response in opposition to Defendant's motion for summary judgment,[5] it appears that Plaintiff attempts to show

---

[5] Plaintiff's response in opposition to Defendant's motion for summary judgment states that Defendant "seeks dismissal of the Plaintiff's promotion discrimination and retaliation claims on the basis that Plaintiff cannot establish a *prima facie* case of discrimination or retaliation." Doc. 33 at 11. However, as noted above, Defendant concedes, for purposes of summary judgment, that Plaintiff *can* establish a *prima facie* case of discrimination. Doc. 30 at 19. Thus, it is unclear to the undersigned whether Plaintiff is providing the evidence to show that he can establish a *prima facie* case of discrimination and/or retaliation, or whether Plaintiff is offering the evidence to attack Defendant's proffered reason for its hiring decision. Nonetheless, as Defendant has conceded for purposes of summary judgment that Plaintiff has established a *prima facie* case of discrimination, and the undersigned has concluded that Defendant has offered a legitimate,

pretext with the following evidence: (1) Plaintiff was more qualified than Hysmith for the Shop Foreman position because Plaintiff "had actually been performing the duties of Shop Foreman since 2012[,]" and Hysmith had not; (2) Defendant has a pattern and practice of discrimination against Plaintiff, looking back to 2012 when Plaintiff was not promoted to Shop Foreman and an individual named Larry Norris, who was promoted to the position, was unqualified; (3) Hysmith helped write the interview questions for the panel; and (4) Mullino was on the four-member interview panel, when there were usually only three members on the interview panel. Doc. 33 at 11-12. Plaintiff avers that, from this evidence, "[r]easonable inferences can be made that [Defendant] discriminated against Plaintiff[,]" and that "[c]hoosing between any inferences that may be reasonably made . . . is for the fact finder at trial." *Id*. at 12. Thus, Plaintiff asks the court to deny Defendant's motion for summary judgment.

The undersigned turns to evaluate Plaintiff's evidence to determine whether it is sufficient to rebut Defendant's legitimate, nondiscriminatory reason for its employment decision. In so doing, the undersigned must keep in mind that Plaintiff may not merely raise the undersigned's suspicion as to any discriminatory intent by Defendant, but, instead, must rebut Defendant's proffered reason head on with evidence showing that the real reason for Defendant's employment decision is discrimination. Plaintiff must do so by "persuading the court that a discriminatory reason more likely motivated the employer or

---

nondiscriminatory reason for its employment decision, the undersigned will presume that Plaintiff is offering the evidence in order to rebut Defendant's proffered reason as pretext for race discrimination, as offering the evidence for the purpose of proving a *prima facie* case of discrimination is not useful at this stage.

indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.

> (1) *Plaintiff's evidence that he is more qualified for the Shop Foreman position than Hysmith.*

Plaintiff's evidence that he is more qualified for the position of Shop Foreman than Hysmith is not enough to rebut Defendant's legitimate, nondiscriminatory reason for its employment decision. In assessing this argument, a court must be mindful to not substitute its own judgment as to who should have received the job for the employer's judgment. *See Dudley v. Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 801 (M.D. Ala. 1996) (noting that the court does not "sit as a super-personnel department or determine whether the employer exercised prudent business judgment") (internal quotations omitted) (abrogated on other grounds by *Moore v. State of Ala.*, 989 F. Supp. 1412 (M.D. Ala. 1997)). In other words, even if the undersigned believed that Defendant should have promoted Plaintiff instead of Hysmith based upon Plaintiff's qualifications, such a belief would be irrelevant as to whether Defendant's legitimate, nondiscriminatory reason for hiring Hysmith was pretext unless the undersigned could conclude that the disparities in qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Hysmith] over [Plaintiff] for the job in question." *Cooper v. S. Co.,* 390 F.3d 695, 732 (11th Cir. 2004) (quoting *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1254 (11th Cir. 2000)).

Plaintiff argues that he was more qualified than Hysmith for the job of Shop Foreman because Plaintiff was already performing the duties of Shop Foreman since 2012

and Hysmith had not been. Doc. 33 at 11. Plaintiff also testified that he is more qualified because he is "a people person" and has no issues with anyone in the shop or with the drivers, Doc. 31-1 at 166:18-167:20, whereas Hysmith was unable to get along with others, at least at times, because of his use of the "N" word.[6] *Id.*

Assuming *arguendo* that all of Plaintiff's allegations are true—i.e., that he has been the *de facto* Shop Foreman since 2012; that he is a "people person"; and that Hysmith had difficulties getting along with others—this evidence is insufficient to show that Defendant discriminated against Plaintiff because of his race by hiring Hysmith. *See Goodman v. Ga. Sw.*, 147 F. App'x 888, 892 (11th Cir. 2005) (noting that a plaintiff cannot establish pretext by merely showing that the employer's decision was wrong, but must show, instead, that the decision was motivated by race); *Lee,* 226 F.3d at 1254 (holding that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face") (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999)). Notably, it does not appear that Plaintiff's evidence of discrimination was even considered by the interviewers when evaluating the candidates. *See* Doc. 31-3, ¶¶ 7-10 (noting that no past discipline issues, past performance issues, evaluations or other factors were considered in the hiring process other than the interview process). While such information may have been pertinent to the hiring process, the undersigned cannot

---

[6] Plaintiff admitted that this information was likely not even before the interview committee, and Mullino testified that "[n]o past discipline issues, past performance issues, evaluations or other factors were considered in the hiring process." Doc. 31-1 at 167:21-168:15; Doc. 31-2 at 41:1-45:16; 66:9-67:19.

substitute his own wisdom for the employer's, and he certainly cannot infer that the lack of consideration as to these factors was racially motivated. *See Matthews v. City of Mobile,* CIVIL ACTION 14-00601-KD-N, 2016 WL 1736061, at * 25 (S.D. Ala. May 2, 2016) (holding that, even though the plaintiff argued a scoring system may have been unfair, her race discrimination claim failed because she did not show that the scoring system was based on race). Further, the undersigned would note that Plaintiff's evidence does not show that Hysmith was unqualified for the position, and there is certainly not such a large disparity between the qualifications of Plaintiff and Hysmith to conclude that no reasonable person would have chosen Hysmith instead of Plaintiff. Thus, Plaintiff's evidence that he was more qualified than Hysmith for the Shop Foreman position is simply insufficient to rebut Defendant's legitimate, nondiscriminatory reason for hiring Hysmith instead of Plaintiff.

> *(2) Plaintiff's evidence that Defendant has a pattern and practice of discrimination against him.*

Second, Plaintiff attempts to show Defendant has discriminated against him because Defendant, in 2012, selected Norris for Shop Foreman instead of Plaintiff, even though Norris did not have the required qualifications for the position. Doc. 33 at 11. However, for the same reasons set forth immediately above, even if Defendant's decision to promote Norris to Shop Foreman in 2012 was unwise, Plaintiff has not shown that such a decision indicates that Defendant's decision to promote Hysmith to Shop Foreman in 2014 was racially motivated. Notably, although Plaintiff has informed the court that he was the only black candidate in the 2012 selection pool and that he finished second in the process with

Hysmith finishing third, he has not pointed the court to any evidence regarding the actual process of selection in 2012. *See* Doc. 33 at 4-5. Instead, Plaintiff has merely alleged that Norris was not qualified for the position because he lacked certain certifications, and that he never obtained those certifications. *Id*. at 5. Maybe such was the case, but, without much more, it does not indicate that two years later, Defendant's decision to promote Hysmith instead of Plaintiff was based upon race discrimination.

The undersigned would also note that a two-year old hiring decision does not establish a pattern and practice of discrimination against Plaintiff or other black males. Importantly, in an action involving an alleged pattern and practice of racial discrimination by an employer, a plaintiff must establish by a preponderance of the evidence that the racial discrimination was the employer's standard operating procedure, i.e., the regular rather than the unusual practice. *Bazemore v. Friday*, 478 U.S. 385, 398 (1986). However, if Plaintiff is attempting to allege such a pattern and practice of discrimination by Defendant, Plaintiff's evidence—i.e., that Defendant in 2012 did not promote Plaintiff to Shop Foreman—falls woefully short to show that it is Defendant's practice to not promote minority employees. Thus, to the extent Plaintiff is attempting to show evidence of a pattern and practice of race discrimination by Defendant in order to rebut Defendant's legitimate, nondiscriminatory reason for its employment decision, Plaintiff's evidence is insufficient.

>    *(3) Plaintiff's evidence that Hysmith helped write the interview questions for the 2014 position and (4) Plaintiff's evidence that Mullino was on the interview panel.*

16

Finally, Plaintiff argues that "the fact that Hysmith helped write the interview questions and Mullino was on th[e] four[-]member panel of interviewers when there were usually only three members on an interview panel gives an inference of bias towards Hysmith." Doc. 33 at 12.  Plaintiff asserts that the evidence shows that Hysmith assisted Mullino in composing the interview questions for the position. Doc. 33 at 6. Even if this is true and it arguably provided Hysmith an unfair advantage in the interview process, it certainly is not evidence that Defendant's decision to promote Hysmith was based on Plaintiff's race. Plaintiff has pointed to no evidence in the record that the questions were designed to prevent Plaintiff, specifically, from receiving the promotion because of his race. Nor has Plaintiff shown that any of the questions would necessarily disadvantage Plaintiff—or any other black candidate—because of his race. True, Plaintiff speculates that the conspiracy between Hysmith and Mullino was designed to prevent him from receiving the position; however, even if such speculation is true, it could be that the conspiracy occurred because Mullino simply preferred Hysmith to Plaintiff for reasons completely unrelated to Plaintiff's race. Without more evidence, Plaintiff's speculation fails to establish that Defendant's legitimate, nondiscriminatory reason for its employment decision was merely pretext.

As part of the same argument, Plaintiff points the court to evidence that the four-member panel that chose Hysmith over Plaintiff had one more member—namely Mullino—than the traditional three-member panel. Doc. 33 at 12. Plaintiff suggests that this creates an inference of bias against Plaintiff. *Id*. However, Plaintiff presents no evidence that, even if the panel size was unusual, such variation was designed to prevent

Plaintiff from being selected as the Shop Foreman due to his race. Mullino could have placed himself on the panel, assuming *arguendo* that such placement was unusual or suspicious, because he preferred Hysmith over Plaintiff for a multitude of reasons not related to Plaintiff's race. Further, it should be noted that each of the four-member, racially-diverse panel scored Hysmith higher than Plaintiff. Plaintiff has not provided evidence that Mullino influenced the other members' decisions in any way; thus, even without Mullino involved in the selection process, three independent decision-makers chose Hysmith over Plaintiff. Thus, the fact that Mullino was on the panel, or that the panel was one member larger than normal, does not combat Defendant's legitimate, nondiscriminatory reason for selecting Hysmith instead of Plaintiff.

In conclusion, Plaintiff has failed to provide evidence sufficient to rebut Defendant's legitimate, nondiscriminatory reason for hiring Hysmith—i.e., that Hysmith scored higher in the interview process than Plaintiff. Indeed, Plaintiff's evidence does not persuade the undersigned that a discriminatory reason more likely motivated Defendant's hiring decision, nor does it show, through indirect means, that Defendant's proffered reason for its decision is unworthy of credence. *See Burdine*, 450 U.S. at 256. Accordingly, the undersigned concludes that Plaintiff has not met his burden of persuasion, and, therefore, Defendant's motion for summary judgment should be granted.[7]

---

[7] In Plaintiff's brief in opposition to Defendant's motion for summary judgment, Plaintiff asserts that "[r]easonable inferences can be made that [Defendant] discriminated against Plaintiff" and that his "forecast of the evidence affords the fact finder an ample basis to infer a discriminatory motive in failing to promote the Plaintiff to Shop Foreman in 2014." Doc. 33 at 12. However, the undersigned notes this is not the standard Plaintiff must meet in opposing Defendant's motion for summary judgment, particularly considering that Defendant has proffered a legitimate, nondiscriminatory reason for its employment decision. As noted above, Plaintiff may not merely ask the court to infer a discriminatory motive at this

B.    **Plaintiff's race-based retaliation claim.**

Plaintiff's amended complaint states: "Employer retaliated against Gunn by accusing him of wrongdoing and placing negative statements in his personnel file for doing the same actions that white employees were allowed to do." Doc. 12 at 4. It is unclear whether Plaintiff attempts, through this statement, to assert a claim for race-based retaliation. However, to the extent that Plaintiff's statement is an attempt to state a claim for retaliation, Plaintiff has in no way addressed Defendant's argument that such a claim should be dismissed at summary judgment. Indeed, Plaintiff states, as his entire argument in opposition to Defendant's motion for summary judgment on the retaliation claim, the following: "Plaintiff's retaliation claim rests on the treatment he was subjected to after he complained about the race discrimination in 2012, and again in 2014. This issue also poses factual questions that can only be resolved at trial." Doc. 33 at 12. Such a statement is insufficient for Plaintiff to survive summary judgment on this issue. *See* Doc. 23 at ¶ 7 ("Any discussion of evidence in a brief must include the specific reference, by page and line, to where the evidence can be found in the supporting evidentiary appendix or in a court pleading or other filing[.]"). Thus, the undersigned concludes that, to the extent Plaintiff asserted a claim for race-based retaliation in the amended complaint, Plaintiff has

---

stage. *See Wilson*, 376 F.3d at 1088 (noting that a plaintiff must rebut the employer's legitimate, nondiscriminatory reason head on with evidence showing that the real reason is racial discrimination). Instead, Plaintiff must persuade the court that Defendant's proffered reason for the employment decision is merely pretext. *See Burdine*, 450 U.S. at 256 (noting that the plaintiff must rebut the reason by directly persuading the court that a discriminatory reason more likely motivated the decision or by indirectly showing that the reason is unworthy of credence). For the reasons discussed more fully above, the undersigned concludes that Plaintiff's evidence, alone or in conjunction, does not meet this standard. Thus, Defendant's motion for summary judgment as to Plaintiff's race discrimination claim should be granted.

abandoned the claim and that Defendant should be granted summary judgment as to the claim.

Further, the undersigned would note that to state a *prima facie* claim of retaliation pursuant to Title VII, a plaintiff must allege (1) he was engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Entrekin v. City of Panama City, Fla.,* 376 F. App'x 987, 993–94 (11th Cir. 2010) (citing *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001)). Under this standard, even if Plaintiff had presented a sufficient argument against Defendant's motion for summary judgment, Plaintiff has pointed to no evidence that he engaged in protected activity—through formal or informal means—that would satisfy the first requirement for a retaliation claim. *See* Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a) (noting that the protection afforded by retaliation provision of Title VII is not limited to employees who have filed formal complaints, but extends as well to those who informally voice complaints to their superiors or who use their employer's internal grievance procedures). In addition, to the extent that Plaintiff is claiming that his adverse employment action consisted of Defendant "placing negative statements in his personnel file for doing the same actions that white employees were allowed to do," such action does not rise to the level of an adverse employment action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1240-43 (11th Cir. 2001) (holding that job performance memoranda did not constitute an adverse employment action). Accordingly, even if Plaintiff's opposition to Defendant's motion for summary judgment could somehow be construed as an attempt to defend his claim for

retaliation, Plaintiff has not provided the court with the essential evidence required to maintain the claim.

## V. CONCLUSION

For the reasons discussed above, it is the

RECOMMENDATION of the undersigned Magistrate Judge that Defendant's Motion for Summary Judgment (Doc. 29) be GRANTED and that Plaintiff's complaint be DISMISSED. Further, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before March 22, 2018**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

DONE this 8th day of March, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE